

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,               )      *Opinion issued June 30, 2020*
                                           )
              Respondent,        )

v.                                   )     No. SC97697

MARK C. BRANDOLESE,         )

              Appellant.         )

## APPEAL FROM THE CIRCUIT COURT OF PETTIS COUNTY
The Honorable Robert L. Koffman, Judge

Mark C. Brandolese appeals from the circuit court's judgment convicting him of one count of second-degree domestic assault and one count of armed criminal action. Brandolese raises six points of error, challenging the circuit court's failure to disqualify a juror, the jury instruction submitted on self-defense, the circuit court's response to the jury's question regarding the mental state for domestic assault, and two evidentiary rulings. The circuit court's judgment is affirmed.[1]

---

[1] This Court has jurisdiction under article V, section 10 of the Missouri Constitution.

## Factual and Procedural History

Brandolese and C.E. resided together as roommates. In March 2016, a neighbor called the police after C.E. appeared at the neighbor's home with blood on his face. C.E. repeatedly told the neighbor Brandolese hit him in the head with a cane.

Officer Todd Nappe responded to the neighbor's home and spoke to C.E., who appeared intoxicated. C.E. stated Brandolese cut him, and his injuries were photographed. Officer Nappe also observed a cut across C.E.'s chest. Officer Nappe followed a trail of blood from the neighbor's home to the apartment where Brandolese and C.E. resided.

When Officer Nappe spoke to Brandolese about the incident, Brandolese told Officer Nappe that, while he was asleep in a recliner, C.E. approached him and punched him in the face. Brandolese woke up, grabbed his walking cane, and hit C.E. with it. Brandolese stated the altercation moved into the bathroom, at which point Brandolese pushed C.E. into a vanity mirror, causing it to break. Brandolese admitted to Officer Nappe he "slashed" C.E. with a knife. Officer Nappe did not observe any visible marks on Brandolese consistent with his account of being punched in the face; however, Brandolese had blood on his left hand. Officer Nappe seized a blood-stained walking cane and a small folding pocket knife.

Brandolese was arrested and charged with first-degree domestic assault, armed criminal action, and unlawful use of a weapon.[2] At trial, C.E. did not testify. Brandolese asserted self-defense but submitted outdated and improper self-defense instructions to the

---

[2] The unlawful use of a weapon charge was dismissed prior to trial.

2

court. The circuit court submitted to the jury a self-defense instruction tendered by the State that was also an outdated version of the pattern instruction. The jury returned a verdict finding Brandolese guilty of a lesser-included offense, second-degree domestic assault, and armed criminal action. The circuit court sentenced Brandolese as a prior and persistent offender to concurrent terms of 15 years' imprisonment for domestic assault and 10 years' imprisonment for armed criminal action. Brandolese appeals.[3]

## I. Juror Disqualification under Section 494.470.1[4]

In his first point, Brandolese argues the circuit court plainly erred in failing to strike for cause Juror No. 16 because she was the sister of an assistant prosecuting attorney who participated in Brandolese's case. Brandolese claims Juror No. 16 was statutorily disqualified from serving on the jury pursuant to section 494.470.1, and the circuit court's ruling violated his right to a fair and impartial jury requiring reversal of his conviction and a new trial.

All parties agree that Juror No. 16 is related to Robert Anthony Farkas, who served as an assistant prosecuting attorney in Pettis County where Brandolese was convicted. Farkas signed the complaint charging Brandolese. Docket entries indicate Farkas appeared on the State's behalf in Brandolese's case on March 22, April 12, and May 17, 2016. On June 1, 2016, a grand jury indicted Brandolese. Docket entries do not contain any reference

---

[3] Other relevant facts will be discussed as necessary in the appropriate sections of this opinion.

[4] All statutory references are to RSMo Supp. 2013 unless otherwise indicated.

3

to Farkas participating in the matter after Brandolese's indictment was returned, and Farkas did not participate in Brandolese's trial in May 2017.

Phillip Sawyer, Pettis County's elected prosecuting attorney, represented the State at Brandolese's trial. During jury selection, Juror No. 16 responded to a question posed by defense counsel about being a crime victim. After Juror No. 16 gave her response to the question, the following exchange took place:

[Defense Counsel]: I notice your last name. Are you a relative of Tony [F]arkas?

Juror 16: Yes. That's my brother.

[Defense Counsel]: So your brother is a prosecutor?

Juror 16: Yeah.

Neither party questioned Juror No. 16 further about her relationship with her brother, prior knowledge of the case due to the relationship, or whether the relationship would affect her ability to be fair and impartial.

While asserting challenges for cause, Brandolese made a contemporaneous objection to Juror No. 16 being seated on the jury because she was Farkas' sister, but he did not argue or claim Juror No. 16 was statutorily disqualified as authority for striking her. The discussion was limited to Juror's No. 16's ability to be fair and impartial and included the following exchange:

The Court: Strikes for the defense?

[Defense Counsel]: Farkas' sister, Number 16, I think she should go for cause.

The Court: Again, the question wasn't asked –

4

[The State]: There was no question.

The Court: -- to delve into why she couldn't be fair. It just -- all the question was, she's Tony Farkas' sister, nothing on why she can't be fair. I'm not taking that one for cause.

[Defense Counsel]: Even though her beloved brother works for the prosecutor.

The Court: That's great.

[Defense Counsel]: Okay.

The Court: I don't even know if it's a beloved brother. I didn't hear any evidence to that, either. The questions that would prejudice her have not been asked. She's giving you something that causes you to strike her for preemptory challenge, I would agree, but for cause, I haven't heard it. Overruled.

Defense counsel did not use a peremptory strike to remove Juror No. 16, and she served on the jury. Brandolese's claim of error on this issue was not included in his motion for new trial and at no time during the proceedings before this appeal did Brandolese allege Juror No. 16 was statutorily disqualified from serving on the jury pursuant to section 494.070.1. Because Brandolese did not bring this alleged error to the circuit court's attention, Brandolese's claim is reviewed for plain error under Rule 30.20.[5]

*Standard of Review*

Generally, this Court does not review unpreserved claims of error. *State v. Cella*, 32 S.W.3d 114, 117 (Mo. banc 2000). Rule 30.20 alters the general rule by giving appellate courts discretion to review "plain errors affecting substantial rights may be considered in

_____

[5] Brandolese concedes his claim of error was not preserved and seeks plain error review from this Court.

5

the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995), and Rule 30.20). "The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review." *State v. Nathan*, 404 S.W.3d 253, 269 (Mo. banc 2013). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014). Unless manifest injustice or a miscarriage of justice is shown, an appellate court should "decline to review for plain error under Rule 30.20." *Id*. at 196. Finally, "the defendant bears the burden of demonstrating manifest injustice entitling him to" plain error review. *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

*Analysis*

Section 494.470.1 provides, in pertinent part, "no person who is kin to … the injured party, accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause." Brandolese argues his challenge to strike Juror No. 16 for cause should have been sustained pursuant to section 494.470.1. Brandolese contends the statute's use of "prosecuting or circuit attorney" refers to any attorney representing the State who participated in the prosecution of the case,

6

making Juror No. 16 disqualified to serve on the jury. The State contends "prosecuting or circuit attorney" as used in section 494.470.1 applies only to the elected prosecuting attorney, not assistant prosecuting attorneys. Juror No. 16's brother was not the elected prosecutor, so the State argues the statute does not disqualify Juror No. 16.

This Court, however, need not decide whether the circuit court's failure to sustain Brandolese's challenge to strike Juror No. 16 for cause violated section 494.470.1 because Brandolese has not demonstrated the alleged error led to manifest injustice warranting plain error review. Rule 30.20. Assuming, without deciding, whether section 494.470.1 applies to the facts of this case and the circuit court erred in not striking Juror No. 16, Brandolese must still "facially establish[] substantial grounds for believing that manifest injustice or miscarriage of justice has resulted" to be entitled to plain error review and relief. *Clay*, 533 S.W.3d at 714; *Oates*, 540 S.W.3d at 863. Although Brandolese claims the circuit court's failure to disqualify Juror No. 16 pursuant to section 494.470.1 violated his right to a fair and impartial jury resulting in manifest injustice, there is no evidence or allegation beyond the alleged unpreserved error itself that Brandolese suffered an unfair or unjust trial. Brandolese, therefore, has not met his burden to establish manifest injustice.

To be sure, a juror who cannot be fair and impartial should be stricken for cause to ensure a fair and just trial. *State v. Clark-Ramsey*, 88 S.W.3d 484, 488-89 (Mo. App. 2002). However, Brandolese does not allege nor demonstrate that Juror No. 16 was unfair or partial causing a manifest injustice in his trial. Brandolese points to no statement by Juror No. 16 that she was biased or partisan due to her relationship with her brother, nor does he present any other evidence of unfairness, nor could he. Juror No. 16's only relevant

7

statement during jury selection responded to a question whether she was related to Farkas, and no further questions were posed to Juror No. 16 about her relationship with her brother or its effect on her ability to render an impartial and unbiased verdict. Previously, this Court has not found reversible error after the defendant failed to ask the "obvious questions" to show prejudice by a member of the jury panel. *See State v. Walton*, 796 S.W.2d 374, 378-79 (Mo. banc 1990) (A juror who had "acquaintance and conversation" about the case "was not shown to have formed any opinion or to have been exposed to any facts indicating defendant's guilt" because the exposure to the case "may have been prejudicial or may have been innocuous." To find prejudice "requires one to engage in assumptions not supported by the record."); *see also Grimm v. Gargis*, 303 S.W.2d 43, 49-50 (Mo. 1957) (finding no error in refusing to strike a potential juror who was a longtime friend of the plaintiff and visited the plaintiff in the hospital while plaintiff was recovering from injuries that were at issue in the case). Because Brandolese has not shown or even alleged Juror No. 16 was biased or unfair, he cannot establish manifest injustice warranting plain error review and relief.

Moreover, Brandolese has not shown or even alleged that Juror No. 16 was aware of Farkas' participation in Brandolese's pretrial proceedings. Juror No. 16's only relevant statement responded to a question whether she was related to Farkas. The question did not say or suggest Farkas participated in the prosecution of the case at any point. The defense asked Juror No. 16 only to clarify that her brother is a prosecutor. Brandolese and the dissenting opinion claim section 494.470.1 was violated not solely because Juror No. 16 was related to an assistant prosecutor but also because Juror No. 16 was related to an

8

assistant prosecutor that participated in the prosecution of his case.[6] This Court cannot presume or impute bias to Juror No. 16 without some evidence or suggestion the juror knew her brother was involved in an early stage of the prosecution.[7] *See State v. Miller*, 56 S.W.2d 92, 96 (Mo. 1932) (finding no prejudicial error in denying a new trial because "[a] juror cannot be prejudiced by a fact unknown to him"); *State v. Chandler*, 314 S.W.2d 897, 900 (Mo. 1958) (finding no prejudicial error in denying a new trial when the source of presumed bias was unknown to the disqualified juror); *Cf. State v. Stewart*, 246 S.W. 936, 939-40 (Mo. 1922) (holding no error in failing to disqualify a juror who was unaware he was distantly related to the victim). "While the fact of relationship disqualifies the juror, it is really knowledge of such fact on the part of the juror that may be expected to and in fact does make such juror biased or prejudiced." *Miller*, 56 S.W.2d at 96; *see also*

---

[6] Even during the discussion with the circuit court about Brandolese's challenge for cause, the defense did not mention that Farkas briefly worked on the case more than a year before trial. The challenge asserted only that Juror No. 16 should be stricken for cause because her brother worked "for the prosecutor." In fact, on review of the record on appeal, it is not clear whether the defense, the State, or the court knew Farkas participated in the preliminary proceedings of Brandolese's case. The challenge for cause was based solely on Juror No. 16's relationship to an assistant prosecutor, not to an assistant prosecutor who participated in the case at hand. But both Brandolese and the dissenting opinion would find the circuit court committed plain error as a result of this fact that was never brought to the court's attention.

[7] The only presumption this Court's prior holdings require is that Juror No. 16 was a fair and impartial juror. This Court has stated jurors are presumed to have followed the instructions received from the court during trial. *State v. Storey*, 901 S.W.2d 886, 892 (Mo. banc 1995). Instruction No. 1 instructed Juror No. 16 and the other members of the jury that their verdict "must be based only on the evidence presented to you in the proceedings in the courtroom." Further, Instruction No. 1 directly commanded jurors to "perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case." This Court, therefore, cannot presume Juror No. 16 was biased or partial in the absence of evidence supporting that conclusion; rather, this Court must presume she performed her duties as a juror fairly and impartially as Instruction No. 1 commanded. *Id.*

9

*Chandler*, 314 S.W.2d at 900. While Juror No. 16 knew of her relationship to Farkas, the record does not show she knew of Farkas' involvement in the case. As this Court has explained, a juror cannot be prejudiced by a fact unknown to her.

Brandolese argues and concedes that, but for her brother's participation in his case, Juror No. 16 would have been eligible to serve as a juror pursuant to section 494.470.1. Implicit in this position is the supposition that if Juror No. 16's brother had not participated in the case, Brandolese would have enjoyed a fair and impartial jury even though Juror No. 16 knew her brother worked in the same office that prosecuted Brandolese. The injustice alleged by Brandolese, therefore, hinges on Farkas' participation in Brandolese's case – a fact unknown to Juror No. 16. As *Miller* and *Chandler* instruct, however, it is the knowledge of the disqualifying fact that creates the injustice, not the mere existence of the fact. Because there is no evidence Juror No. 16 knew her brother participated in the case, there is no basis warranting a finding of prejudice under this Court's decisions in *Miller* and *Chandler*.

Nothing in the record before this Court establishes Juror No. 16 caused an injustice to Brandolese or prejudiced him. Brandolese does not allege and presents no evidence of unfairness or impartiality from the juror in question. In the complete absence of evidence showing bias or partisanship—or even evidence showing knowledge of the allegedly disqualifying relationship—Brandolese cannot establish manifest injustice.

The dissenting opinion recognizes the alleged violation of section 494.470.1 is limited to plain error review because Brandolese failed to include the error in his motion for new trial. *Slip op.* at 3. Even after this recognition, the dissenting opinion fails to apply

10

Rule 30.20 framework and, instead, delves into a full merits analysis that relies on unnecessary interpretations of section 494.470.1 and constitutional and structural error arguments. This position, however, ignores Rule 30.20's exclusivity by jumping into a merits analysis without finding manifest injustice. Such a conclusion is unsupported by this Court's precedent and the language of Rule 30.20, which limits plain error review to situations "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

As previously stated, Rule 30.20 alters the general rule that this Court does not address unpreserved claims of error. It is axiomatic, then, that the only way to review an unpreserved claim of error is to comply with Rule 30.20. There is no alternative method for applying plain error review. Based on the alleged error, the dissenting opinion, however, utilizes a different method to conduct plain error review of this claim.

The dissenting opinion suggests this Court's plain error analysis does not apply if an unpreserved statutory or constitutional violation is serious enough because the alleged error, in and of itself, establishes manifest injustice. This assertion has no basis in Rule 30.20, which clearly states that, in the realm of plain error, it matters not what the claim of error is, only that the claim of error is unpreserved. *See* Rule 30.20. The dissenting opinion's assertion is also belied by this Court's plain error precedent, which regularly addresses both statutory and constitutional claims through its well-established plain error framework and not any altered standard. *See Grado v. State*, 559 S.W.3d 888, 899-900 (Mo. banc 2018) (applying plain error analysis to unpreserved constitutional claim of

error); *see also State v. Johnson*, 524 S.W.3d 505, 511-15 (Mo. banc 2017) (applying plain error analysis to unpreserved statutory claim of error).[8]

Furthermore, this Court previously rejected the argument that constitutional violations are subject to a different plain error analysis in *State v. Howard*, 540 S.W.2d 86 (Mo. banc 1976). In *Howard*, the defendant sought plain error review after the circuit court commented on the defendant's failure to testify during his jury trial. *Id.* at 87. On appeal, it was suggested that Howard was automatically entitled to plain error relief without establishing manifest injustice because of the egregious federal constitutional violation. *Id.* This Court rightly refused this invitation, holding "[e]ven a federal constitutional error may be considered harmless. We will continue to review all the facts and circumstances in each case and determine on a case-to-case basis whether manifest injustice has resulted from the alleged error." *Id.* (internal citation omitted). This Court then utilized plain error analysis to determine a manifest injustice occurred at Howard's trial. *Id.* at 87-88. Therefore, *Howard* stands for the proposition that all errors—whether statutory, constitutional,

---

[8] The unpreserved claim of structural error alleged by the dissenting opinion also does not automatically warrant reversal without a showing of manifest injustice. The dissenting opinion acknowledges the United States Supreme Court "has several times declined to resolve whether 'structural' errors—those that affect 'the framework within which the trial proceeds,' —automatically satisfy the third prong of the plain-error test." *Puckett v. United States*, 556 U.S. 129, 140 (2009) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)) (internal citation omitted). Moreover, federal courts do not follow Rule 30.20 and apply a different standard for conducting plain error review than Missouri courts. While the federal question remains open as to the application of plain error review to claims of structural error, this Court's precedent on plain error review under Rule 30.20 is clear in requiring a showing of manifest injustice.

structural, or based in some other source—are subject to the same treatment under this Court's plain error framework.

To be sure, however, Brandolese suffered no constitutional infirmity when Juror No. 16 served on the jury even if she was statutorily disqualified. The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 18(a) of the Missouri Constitution guarantee a criminal defendant the right to a fair and impartial jury. *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998). The constitutional right to a fair and impartial jury, however, does not itself require the exclusion of any juror within a certain degree of consanguinity or with another personal relationship to one of the parties. *See State v. Ervin*, 835 S.W.2d 905, 915-16 (Mo. banc 1992). Absent a federal constitutional violation, states have the power to decide whether an error in violation of state statute requires automatic reversal. *Rivera v. Illinois*, 556 U.S. 148, 161-62 (2009).

Rule 30.20 is the exclusive means by which an appellant can seek review of ***any*** unpreserved claim of error and said claim—no matter if it is statutory, constitutional, structural, or of some other origin—is evaluated by this Court's plain error framework without exception. A violation of section 494.470.1 or any juror qualification statute does not itself manifestly insinuate that a defendant received an unfair and unjust trial warranting plain error review and relief under Rule 30.20.[9] Under plain error review, the defendant

---

[9] There are many other juror disqualification provisions beyond section 494.470. Section 494.425 contains a long list of disqualifications for prospective jurors. Statutorily disqualified jurors include: anyone under 21 years of age; a person who is not a resident of the area served by the court serving summons; a felon who has not had his or her civil rights restored; any person on active military duty; and a judge. Absent evidence to the

13

still bears the burden of establishing manifest injustice if an unqualified juror serves on a jury. *Oates*, 540 S.W.3d at 863. While an individual who meets the criteria for disqualification under section 494.470.1 should be disqualified and excused, failure to do so does not independently result in manifest injustice, especially where there is no evidence the juror knew of her relative's involvement in the case. Therefore, Brandolese is not entitled to reversal of his conviction and a new trial because the circuit court declined to strike Juror No. 16 for cause.

## II. Instructional Errors

In Points II, III, and IV, Brandolese alleges the circuit court erred instructing the jury on self- defense and the definition of knowingly as used in a separate instruction. These claims of error, however, were not raised with the circuit court. The self-defense instruction the circuit court gave at the State's request was based on an outdated version of the pattern instruction. While Brandolese objected to giving this instruction, he requested and proposed two separate self-defense instructions that, likewise, were outdated and improper. During jury deliberations, the jury submitted a written question to the court asking for a definition of "knowingly" as used in the second-degree domestic assault verdict director. Without objection from Brandolese, the circuit court responded to the jury's question with the following instruction: "You are bound by the law as it has been presented to you. This is the only answer the Court is allowed to give you."

---

contrary, manifest injustice does not automatically result if a statutorily disqualified juror serves on a jury. If this Court were to hold otherwise, appellate courts would be required to grant relief under plain error review any time a defendant raises the disqualifying fact for the first time on appeal regardless of whether a challenge for cause was made.

14

Point II alleges the circuit court erred in not modifying *sua sponte* the self-defense instruction submitted to the jury to remove initial aggressor language or, in the alternative, to include a definition of the term "initial aggressor." Point III alleges the circuit court erred in not modifying *sua sponte* the same self-defense instruction to include the option of non-deadly force as well as to include proper language and guidance regarding permissible use of deadly force. In Point IV, Brandolese alleges the circuit court erred in failing to define the term "knowingly" following the written question from the deliberating jury. Brandolese requests plain error review of all three allegations of instructional error.

*Standard of Review*

"Instructional error requires reversal when the error is 'so prejudicial that it deprived the defendant of a fair trial.'" *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017) (quoting *State v. Nash*, 339 S.W.3d 500, 511-12 (Mo. banc 2011)); *see also State v. Forrest*, 183 S.W.3d 218, 229 (Mo. banc 2006). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *State v. Baumruk*, 280 S.W.3d 600, 608 (Mo. banc 2009) (internal quotations and alterations omitted). But even if the instructional error is evident, obvious and clear, the defendant must "demonstrate that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice." *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007). Moreover, "plain error review is discretionary," and "this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *State v. Bolton*, 371 S.W.3d 802, 806 (Mo. banc 2012).

15

*Analysis*

**Point II**

Brandolese alleges the circuit court plainly erred in not modifying *sua sponte* the State's non-compliant jury instruction either to remove "initial aggressor" language or to provide a definition of "initial aggressor." He supposes the jury's verdict would have differed without the initial aggressor language, or if the court had provided a definition of "initial aggressor."

Because Brandolese requested the circuit court commit error by submitting improper and non-compliant self-defense instructions, he is not entitled to plain error review of this matter. Failure to submit a mandatory instruction is reversible error under plain error review when the instruction is requested by the defendant and refused by the circuit court. *State v. Westfall*, 75 S.W.3d 278, 281 n.9 (Mo. banc 2002). However, a party invites error by submitting a patently incorrect instruction. "It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making." *State v. Mayes*, 63 S.W.3d 615, 632 n.6 (Mo. banc 2001) (alteration omitted). In *State v. Bolden*, this Court declined to conduct plain error review and impose a *sua sponte* duty to modify a self-defense jury instruction when the defendant invited the error by agreeing to the instruction. 371 S.W.3d at 805-06. Brandolese did not agree to the self-defense instruction submitted by the circuit court, but he invited error by requesting and proposing outdated and improper self-defense instructions. While the case here can be distinguished from *Bolden*, this Court similarly should "not use plain error to impose a *sua sponte* duty on the trial court" to instruct the jury properly when the very instructions Brandolese requested

16

the circuit court submit invited and would have caused the circuit court to commit instructional error. *Id*. at 806.

Even if this Court were to exercise its discretion and conduct plain error review, it cannot find manifest injustice—let alone an "evident, obvious, and clear" error—for failing to modify an instruction that does not erroneously state the law. *See Baumruk*, 280 S.W.3d at 607-08. The Notes on Use for the approved pattern self-defense instruction provide the initial-aggressor language should be excluded only if "there is *no evidence* that the defendant was the initial aggressor or provoked the incident." *See* MAI-CR 3d 306.06 and MAI-CR 3d 306.06A, Notes on Use 4(a) (emphasis added). If there is evidence the defendant was the initial aggressor, the self-defense instruction should include the initial-aggressor language. *Id*. The evidence the State elicited that Brandolese had no visible marks on his face consistent with being punched in the face suggest Brandolese, not C.E., was the initial aggressor or provocateur in the altercation and supported submitting the initial aggressor language. Similarly, Brandolese cannot establish manifest injustice for the lack of definition of initial aggressor. Mere speculation as to what might have occurred if the term were defined is not sufficient to establish manifest injustice. *See State v. Goodwin*, 43 S.W.3d 805, 820 (Mo. banc 2001). Therefore, Brandolese fails to show how the circuit court's instruction with the undefined initial aggressor language constituted evident, obvious and clear error resulting in manifest injustice.

**Point III**

In his third point, Brandolese alleges the circuit court erred in not *sua sponte* modifying the self-defense instruction as it pertains to the use of deadly force. Brandolese

17

argues the instruction submitted to the jury failed to reflect that the issue of whether he used deadly force was in question under the facts of the case. He contends the term "non-deadly" should have been included in the instruction; he also complains of various other non-substantive deviations from the pattern instruction. Notably, the instructions Brandolese proposed and submitted to the circuit court also deviated from the pattern instruction with respect to these issues.

Brandolese fails again to make the required showing warranting relief under plain error review. As in *Bolden*, this Court does not wish to impose a duty on the circuit court to modify *sua sponte* a jury instruction when the instruction Brandolese submitted deviated from the pattern instruction and invited the court to err in the manner claimed on appeal. *Bolden*, 371 S.W.3d at 806.

In addition, the submitted instruction did not erroneously state the law. The instruction omitted the term "non-deadly" and other language from the approved patterned instruction when describing the use of force in self-defense but accurately explained the facts the jury must find "for a person lawfully to use force in self-defense." MAI-CR 3d 306.06 (eff. 1-1-07); MAI-CR 3d 306.06A (eff. 1-1-09). While the non-compliant instruction submitted by the circuit court did not suggest whether the force Brandolese used was deadly or non-deadly, the language and guidance in the instruction did not deviate from the substantive law. Therefore, Brandolese cannot establish an evident, obvious, and clear error that resulted in manifest injustice solely through non-substantive variation in the language of the self-defense instruction.

18

**Point IV**

In his fourth point, Brandolese alleges the circuit court plainly erred in its response to the deliberating jury's request for a definition of "knowingly" as used in the verdict director for second-degree domestic assault. This verdict director required the jury to find Brandolese "knowingly caused physical injury to" C.E. The instruction did not, however, define "knowingly." The jury asked the court for a definition, noting the verdict director for the lesser-included offense of third-degree domestic assault included a definition of "recklessly." After conferring with the parties, the court answered, "You are bound by the law as it has been presented to you. This is the only answer the Court is allowed to give you."

"The response to a jury question is within the sound discretion of the trial court and the practice of exchanging communications between the judge and jury is not commended." *State v. Guinn*, 58 S.W.3d 538, 548 (Mo. App. 2001) (citing *State v. Taylor,* 408 S.W.2d 8, 10 (Mo. 1966)). "Responses that simply refer the jury to the proper instructions already given are not improper." *State v. Johnston,* 957 S.W.2d 734, 752 (Mo. banc 1997). The Notes on Use for the approved pattern instruction for second-degree domestic assault provides the term "knowingly" as used in the instruction "*may* be defined by the court on its own motion and *must* be defined upon written request in proper form by the state or by the defendant." MAI-CR 3d 319.74, Notes on Use ¶8 (emphasis added).

Neither party requested the term be defined before the instructions were read to the jury.[10] Therefore, the verdict director was in proper form when read to the jury. When jury instructions are correct, a court may respond to a jury's question by instructing the jury to be guided by those instructions. *State v. Clay,* 975 S.W.2d 121, 134 (Mo. banc 1998).

Brandolese fails to show an error that is evident, obvious, and clear or a manifest injustice from the circuit court's response. Because the verdict director was correct, the court's response to the jury's question was not improper. Furthermore, Brandolese only speculates that the definition of "knowingly" would have changed the outcome of the jury's deliberation in his favor. This speculation does not give rise to manifest injustice. *See Goodwin*, 43 S.W.3d at 820. Therefore, the circuit court's response to the jury's question does not warrant relief under plain error review.

### III. Exclusion of Evidence

Brandolese contends the circuit court abused its discretion in excluding the testimony of a defense witness about the victim, C.E.'s, "reputation" for violence. At trial, Brandolese's counsel informed the circuit court he intended to call another roommate of C.E. as a witness. The witness would testify that, on a specific occasion after the altercation with Brandolese, C.E. drank heavily and acted violently toward the witness. Brandolese argued this evidence would support his claim of self-defense because the witness would show C.E.'s "modus operandi" of drunkenness and violence. Outside the presence of the

---

[10] In response to the jury's question, the State orally requested the circuit court provide the approved pattern instruction definition for "knowingly," but Brandolese did not join in this request.

jury, the witness testified in an offer of proof that he lived with C.E. for about a month and a half after C.E. was assaulted by Brandolese. The witness recounted that he once tried to pour out C.E.'s liquor and C.E. reacted by attacking the witness. The prosecutor objected to witness's proffered testimony, and the circuit court excluded the testimony.

### Standard of Review

The circuit court has broad discretion in admitting evidence at trial, and error will be found only for a clear abuse of this discretion. *State v. Simmons*, 955 S.W.2d 729, 737 (Mo. banc 1997). This Court will find a circuit court abused its discretion only when a ruling is

> clearly against the logic and circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*State v. Brown*, 939 S.W.2d 882, 883-84 (Mo. banc 1997) (alteration omitted). This Court "reviews the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005) (quoting *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999)). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

### Analysis

"[T]he trial court may permit a defendant to introduce evidence of the victim's prior *specific acts* of violence of which *the defendant had knowledge*, provided that the acts sought to be established are reasonably related to the crime with which the defendant is

21

charged." *State v. Waller*, 816 S.W.2d 212, 216 (Mo. banc 1991) (emphasis added). In addition, evidence of a victim's "*reputation* for turbulence and violence is admissible as relevant to show who was the aggressor and whether a reasonable apprehension of danger existed." *State v. Gonzales*, 153 S.W.3d 311, 313 (Mo. banc 2005) (quoting *State v. Buckles*, 636 S.W.2d 914, 923 (Mo. banc 1982)) (emphasis added). However, reputation evidence must be through "general reputation testimony, not specific acts of violence." *Id.* (quoting *Buckles*, 636 S.W.2d at 923). Additionally, the defendant must show he or she knew of the victim's reputation for turbulence and violence. *State v. Rutter*, 93 S.W.3d 714, 731 (Mo. banc 2002).

Here, the witness's testimony did not offer general reputation evidence. Instead, the testimony offered pertained only to a specific act of violence that took place after the assault. Whether C.E. committed a specific act of violence *after* the altercation in this case is not relevant to the question of C.E.'s reputation for violence or Brandolese's reasonable apprehension of harm during the altercation. Under *Rutter*, a specific act of violence would be admissible only if offered to demonstrate a basis for Brandolese to fear C.E. The incident in the witness's testimony that took place after the charged assault, however, could not possibly form the basis for Brandolese's fear of C.E. Furthermore, because the proffered testimony was not general reputation evidence, it could not be admitted to support a theory that C.E. was the initial aggressor. *See Gonzales*, 153 S.W.3d at 313.

Because the witness's testimony described only one specific act by C.E. after the charged incident in this case had occurred, the circuit court acted within its discretion in excluding the witness's testimony.

22

# IV.    Hearsay

Brandolese argues the circuit court committed plain error in allowing hearsay evidence that violated his Confrontation Clause rights. Brandolese complains of several incidents involving supposed hearsay testimony, but these claims of error were not raised or made to the circuit court in the motion for new trial and, therefore, are not preserved for appellate review.

*Standard of Review*

"Unpreserved issues can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." *In re Care & Treatment of Braddy*, 559 S.W.3d 905, 909 (Mo. banc 2018) (internal quotations omitted).[11]

*Analysis*

"A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006). "Hearsay statements generally are inadmissible." *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). Additionally, a testimonial out-of-court statement is not admissible against the defendant under the Confrontation Clause unless the requirements of *Crawford v. Washington*, 541 U.S. 36 (2004), are met. *State v. Kemp*, 212 S.W.3d 135, 147-48 (Mo. banc 2007).[12]

---

[11] The standard for plain error is more thoroughly set forth in the discussion of Point I.

[12] *Crawford* requires exclusion of testimonial, out-of-court statements that are otherwise admissible unless the witness is unavailable at trial and the defendant previously had an opportunity to cross-examine the witness. 541 U.S. at 53-54.

23

The first incident for which Brandolese alleges error involves the neighbor witness's volunteered statement that C.E. told her Brandolese repeatedly hit him with a cane. The following exchange took place during the neighbor's testimony:

Q. Okay. When you called 911, …what did you tell them; what were you aware of?

A. …[The victim] kept telling me over and over and over that…[Brandolese] hit him in the head with a cane.

[Defense Counsel]: Objection.

The Court: What's your objection?

[Defense Counsel]: Hearsay, and that's not hearsay.

[The Prosecutor]: Excited utterance.

[Defense Counsel]: It's not an excited utterance.

The Court: Are you objecting or not?

[Defense Counsel]: I am objecting.

[The Prosecutor]: Excited utterance. He showed up at her house and told her what was going on and to call 911.

[Defense Counsel]: I think you should—

The Court: I think I'm going to sustain that.

The circuit court sustained the objection on which Brandolese bases his claim of error. Therefore, no error—let alone evident, obvious, and clear error—exists.

Later, the circuit court overruled a hearsay objection by Brandolese during Officer Nappe's testimony. The prosecuting attorney asked whether Officer Nappe developed an idea of what happened at the scene:

24

Q. Did you develop some form of an investigation or some form of an idea what transpired by talking to [the victim]?

A. Yes.

[Defense Counsel]: Objection, hearsay.

The circuit court overruled this objection. Brandolese suggests this was an error that is evident, obvious, and clear. However, the question does not ask for hearsay, nor did the officer's response repeat an out-of-court statement. Officer Nappe testified only that he formed an idea of what had taken place after he spoke with C.E. Therefore, Brandolese fails to establish any error in the circuit court's ruling, let alone an evident, obvious, and clear error, nor does he make a showing of manifest injustice.

Finally, the circuit court overruled a hearsay objection by Brandolese when the State asked Officer Nappe how he knew C.E. was cut by a knife and Officer Nappe said C.E. told him Brandolese slashed him with a knife. Immediately following this question, the State asked Officer Nappe if he spoke with Brandolese about the knife. Officer Nappe responded he had and testified Brandolese said he had "sliced the victim with a knife." Brandolese did not object to this portion of Officer Nappe's testimony.

"The improper admission of hearsay evidence requires reversal [only] if such evidence is prejudicial." *Saint Louis Univ. v. Geary,* 321 S.W.3d 282, 291 (Mo. banc 2009). "Confrontation Clause violations are subject to the harmless error test found in *Chapman v. California*, 386 U.S. 18, 24 (1967)." *State v. March*, 216 S.W.3d 663, 667 (Mo. banc 2007). "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Saint Louis Univ.*,

25

321 S.W.3d at 292. "Cumulative evidence is additional evidence that reiterates the same point." *Id.* "Evidence challenged on constitutional grounds that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and so is harmless beyond a reasonable doubt." *State v. Davidson*, 242 S.W.3d 409, 418 (Mo. App. 2007); *see also State v. Bell*, 274 S.W.3d 592, 595-96 (Mo. App. 2009) (finding admitting an examiner's testimony about a doctor's opinions was harmless error because the evidence was cumulative). Plain error review "requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." *State v. Perry*, 548 S.W.3d 292, 300 (Mo. banc 2018) (quoting *State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011)).

In light of subsequent testimony regarding Brandolese's own statement to Officer Nappe, whether the circuit court may have erred in allowing the officer to testify regarding C.E.'s statement in this instance is immaterial. Brandolese cannot show that the error was outcome-determinative and resulted in manifest injustice if later testimony demonstrated the same fact. *See Saint Louis Univ.*, 321 S.W.3d at 292. For this reason, Brandolese is not entitled to relief due to the circuit court overruling his objection to the testimony.

**Conclusion**

The circuit court's judgment is affirmed.

_____
W. Brent Powell, Judge


Wilson and Fischer, JJ., concur; Russell, J., concurs in part and in result and concurs in part in dissenting opinion in separate opinion filed; Draper, C.J., dissents in separate opinion filed; Breckenridge and Stith, JJ., concur in opinion of Draper, C.J.

26



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
            Respondent, )
)
v. )       No. SC97697
)
MARK C. BRANDOLESE )
)
            Appellant. )

## OPINION CONCURRING IN PART AND IN RESULT AND CONCURRING IN PART IN DISSENTING OPINION

I agree with the principal opinion's analysis concluding that Mark Brandolese did not meet his burden establishing manifest injustice and that any violation of section 494.470.1[1] did not constitute plain error. I respectfully disagree, however, with the principal opinion's failure to find a violation of section 494.470.1. I agree with the dissenting opinion's analysis concluding that, for purposes of section 494.470.1, the legislature intended the meaning of "prosecuting attorney" to encompass assistant prosecuting attorneys, and, as a result, Juror No. 16 was disqualified from serving on Brandolese's jury under section 494.470.1. But, for the reasons indicated in the principal

---

[1] All statutory references are to RSMo Supp. 2013 unless otherwise specified.

opinion, Brandolese failed to meet his burden demonstrating manifest injustice or prejudice, and the circuit court's violation of section 494.470.1 did not constitute plain error. Accordingly, I would affirm the circuit court's judgment.

_____

Mary R. Russell, Judge



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                        )
                                          )
                    Respondent,           )
                                          )
v.                                        )        No. SC97697
                                          )
MARK C. BRANDOLESE,                       )
                                          )
                    Appellant.            )

### DISSENTING OPINION

The principal opinion's holding, which condones kin of the assistant prosecuting attorney sitting in judgment on a case in which the assistant prosecuting attorney actively participated in, surely has legal scholar Sir William Blackstone spinning in his grave. Not only is this holding unsupported by centuries-old precedent, Missouri caselaw, or a proper reading of section 494.470.1, RSMo Supp. 2013, under this Court's rules of statutory construction, but it places burdens upon a defendant that are not required by the statute and reaches a patently absurd result.[1]   Accordingly, I dissent.

---

[1] All statutory references are to RSMo Supp. 2013 unless otherwise indicated.

## Juror Disqualification under Section 494.470

In his first point, Mark C. Brandolese (hereinafter, "Brandolese") argues the circuit court plainly erred in failing to strike Juror No. 16 for cause because she was the sister of a Pettis County assistant prosecuting attorney, Robert Anthony Farkas (hereinafter, "Farkas"), who participated in Brandolese's case. Brandolese claims the circuit court's ruling violated his right to a fair and impartial jury and section 494.470.1.

*Standard of Review*

"When the defendant is aware of facts which would sustain a challenge for cause, he [or she] must present [the] challenge during the voir dire examination or prior to the swearing of the jury, otherwise, the point is waived." *State v. Marr*, 499 S.W.3d 367, 376 (Mo. App. W.D. 2016) (quoting *State v. Goble*, 946 S.W.2d 16, 18 (Mo. App. S.D. 1997)). "The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. banc 1991).

While asserting challenges for cause, Brandolese made a contemporary objection to Juror No. 16 being seated on the jury because she was Farkas' sister and characterized Farkas as Juror No. 16's "beloved brother [who] works for the prosecutor." Although Brandolese did not cite section 494.470.1 in his timely objection, he plainly and unequivocally informed the circuit court he believed Juror No. 16 should be struck for cause due to her kinship with Farkas. In *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015), this Court found a strikingly similar objection—which occurred when an improper

2

juror substitution occurred—was timely and specific enough to preserve the error, even though defense counsel failed to cite the specific statute at issue. Here, the undisputed facts show Brandolese did not wait to raise Juror No. 16's qualification to sit as a juror until his appeal. The record unmistakably demonstrates that, prior to the jury being seated, Brandolese fully informed the circuit court his objection to Juror No. 16 sitting on the jury was due to her kinship with Farkas, who undisputedly worked for the prosecuting attorney's office trying his case. However, because Brandolese did not include this claim of error in his motion for new trial, he is entitled only to plain error review. *State v. Perry*, 548 S.W.3d 292, 300 (Mo. banc 2018).

"This Court always has the discretion to engage in plain error review of issues concerning substantial rights, especially constitutional rights …." *State v. Rice*, 573 S.W.3d 53, 73 (Mo. banc 2019) (quoting *State v. Brooks*, 304 S.W.3d 130, 136 n.2 (Mo. banc 2010)). In applying plain error review, the principal opinion reframes the actual legal issue Brandolese presents and scarcely addresses section 494.470.1 or a defendant's substantive, constitutional right to a fair and impartial jury. The principal opinion must ignore section 494.470.1 to reach its desired result because confronting the statute's plain language undermines the principal opinion's entire rationale that there was no manifest injustice in allowing Juror No. 16 to participate in deciding his fate.[2]

---

[2] The principal opinion relies on *State v. Howard*, 540 S.W.2d 86 (Mo. banc 1976), as rejecting a different plain error analysis when constitutional rights are at issue. In *Howard*, the defendant asserted relief *always* should be given under plain error when a constitutional error is implicated. *Id*. at 87. This Court rejected that argument, finding it was appropriate to "determine on a case-to-case basis whether manifest injustice has resulted from the alleged error." *Id*. I do not advocate for automatic reversal in every instance; however, I

3

Brandolese's claim involves a question of statutory interpretation, which is a question of law this Court reviews *de novo*. *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019). "It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible." *State v. Johnson*, 524 S.W.3d 505, 510 (Mo. banc 2017) (quoting *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013)). "This Court must presume every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language." *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013). "This Court may not add language to an unambiguous statute." *Johnson*, 524 S.W.3d at 511.

*The Right to an Impartial Jury*

The Sixth Amendment guarantees every criminal defendant the right to a trial by an impartial jury. U.S. Const. amend. VI. The Missouri Constitution guarantees criminal defendants the right to a "trial by an impartial jury of the county." Mo. Const. art. I, sec. 18(a). Further, in *Theobald v. St. Louis Transit Co.*, 90 S.W. 354, 359 (Mo. 1905), this Court recognized:

> Under our system of jurisprudence there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced.

---

believe this specific case demonstrates Brandolese's constitutional right to a fair and impartial jury was violated when Juror No. 16 was not struck for cause due to her kinship with Farkas, resulting in a manifest injustice.

4

"To qualify as a juror, the venireperson must be able to enter upon that service with an open mind, free from bias and prejudice." *State v. Ervin*, 835 S.W.2d 905, 915 (Mo. banc 1992). "A defendant is entitled to a full panel of qualified jurors before he [or she] makes peremptory challenges ...." *State v. Lovell*, 506 S.W.2d 441, 443 (Mo. banc 1974). "[E]rrors in the exclusion of potential jurors should always be on the side of caution." *State v. Walton*, 796 S.W.2d 374, 381 (Mo. banc 1990) (alterations in original) (quoting *State v. Draper*, 675 S.W.2d 863, 865 (Mo. banc 1984)). Failure to sustain a meritorious challenge for cause to excuse a biased or prejudiced venireperson constitutes prejudicial error. *State v. Schnick*, 819 S.W.2d 330, 333 (Mo. banc 1991).

"Before statehood and up to 1835 [Missouri] had only one statute dealing with the competency of jurors." *State v. Thomas*, 174 S.W.2d 337, 339 (Mo. 1943). The statute "said nothing about any disqualification of jurors because of kinship between them and the litigants." *Id*. In 1835, the legislature adopted Missouri's first criminal code, which contained the first statute to address juror competence in criminal cases:

> When any indictment alleges an offence [sic] against the person or property of another, neither the injured party, or any person of kin to him, shall be a competent juror on the trial of such indictment, *nor shall any person of kin to the prosecutor or defendant, in any case, serve as a juror on the trial thereof.*

Art. VI, sec. 8, RSMo 1835 (emphasis added). "The clear purpose" of this provision was "to secure fair and unprejudiced jurors." *State v. Stewart*, 246 S.W. 936, 939 (Mo. 1922) (construing this statute's successor section 4011, RSMo 1919). Although the constitutional right to a fair and impartial jury does not require the exclusion of jurors within a certain degree of consanguinity to a prosecuting attorney, Missouri has chosen to provide this

5

protection for more than 185 years.[3] The 1835 statute has been recodified several times, but the language disqualifying kin of "a prosecutor" remained virtually identical until 1989, when the legislature adopted section 494.470, which addresses juror competence in both criminal and civil cases.[4]

*Section 494.470*

Section 494.470.1 provides in pertinent part, "no person who is kin to … the injured party, accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause." Brandolese argues his challenge to strike Juror No. 16 for cause should have been sustained because, as Farkas' sister, she was disqualified pursuant to section 494.470.1 from serving on the jury in that Farkas was a prosecuting attorney in the same cause. Brandolese contends

---

[3] The principal opinion cites *Ervin* for the proposition "the constitutional right to a fair and impartial jury does not itself require the exclusion of any juror within a certain degree of consanguinity or with another personal relationship to one of the parties." *Slip op.* at 13. *Ervin* does not so state or hold. Further, *Ervin* is inapposite in that it concerned striking a juror who was an acquaintance of the victim and an investigating officer. *Ervin*, 835 S.W.2d at 915-16. Hence, the juror was *not* related by consanguinity or engaged in a relationship with a party to the case.

[4] In 1989, the legislature also enacted section 494.425, which sets forth instances in which person are ineligible from serving on juries due to age, citizenship, residency, prior felony convictions, certain mental or physical limitations or infirmities, active service in the armed forces, and being a judge in a court of record. The principal opinion expresses concern that failure to disqualify individuals under section 494.425 automatically would result in reversal if this Court adopted my position regarding section 494.470.1. However, the rationale underlying disqualification under 494.470.1 is based on centuries-old precedent specifically addressing the unique relationship kinfolk have with one another such that bias and prejudice resulting from that relationship are presumed as will be discussed below. Hence, this rationale has no logical application to the individuals disqualified under section 494.425.

"prosecuting attorney" refers to any attorney representing the state who participated in the prosecution of the case.

The principal opinion declines to address this issue or Brandolese's arguments that his fundamental right to a fair and impartial jury was violated. Instead, the principal opinion focuses on whether Brandolese could demonstrate Juror No. 16's participation resulted in a manifest injustice. The principal opinion's analysis puts the proverbial cart before the horse. The simple fact Juror No. 16 was allowed to participate as a member of the jury, and whatever influence she may have brought to bear during deliberations, is the error, not whether the jury's verdict was manifestly unjust.

Construing section 494.470.1's plain language reveals the patently absurd result that occurs in adopting the state's position and condoning Juror No. 16's participation in this matter. Had Farkas remained the attorney of record and Juror No. 16 was on the venirepanel, the principal opinion would condone her sitting in judgment in the absence of a showing she was biased or prejudiced. Hence, I feel it is important to analyze section 494.470.1 to further demonstrate the flaws in the principal opinion's manifest injustice rationale.

The state seeks to narrow the definition of prosecuting attorney to refer to the attorney's position as the elected prosecuting attorney of the county in which a defendant's trial takes place. The state supports its construction by citing several provisions in chapter 56, which regulates the election, qualification, conduct, salary, and retirement benefits of the elected prosecuting attorney and any appointed assistant prosecuting attorney. The state also relies on section 56.060.1, which confers upon the elected

7

prosecuting attorney the power to commence and prosecute all civil and criminal cases within his or her county. The state argues, because the elected prosecuting attorney is the only individual authorized to commence a criminal cause, this is the only way to construe "prosecuting attorney" in section 494.470.1.

The legislature needs to delineate between elected and assistant prosecuting attorneys when conferring these duties, powers, and compensation. However, this delineation is not intended to employ chapter 56's statutory distinctions to eviscerate a defendant's fundamental, constitutional right to a fair and impartial jury when disqualifying a prosecuting attorney's kin from jury service. This narrow reading also ignores the unique role the elected prosecuting attorney and his or her assistant prosecuting attorneys play in the criminal justice system. "A prosecuting attorney is a quasi-judicial officer entrusted and charged not only with the important responsibility to prosecute vigorously and fearlessly in behalf of the state but also with the no less positive obligation to see that every defendant so prosecuted nevertheless is accorded a fair trial." *State v. Selle*, 367 S.W.2d 522, 530 (Mo. 1963) (internal citation omitted). "Their duty is not to seek convictions at any cost, but to see that justice is done and that defendants receive *fair and impartial* trials." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 581 (Mo. banc 1994) (emphasis added). This Court recognized, "An assistant or deputy prosecuting attorney legally appointed is generally clothed with all the powers and privileges of the prosecuting attorney; and all acts done by him in that capacity must be regarded as if done by the prosecuting attorney himself." *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 565 n.9 (Mo. banc 2012) (quoting *State v. Falbo,* 333 S.W.2d 279, 284 (Mo. banc 1960)).

8

Moreover, limiting the meaning of prosecuting attorney to the elected prosecuting attorney would render the words "in the same cause" meaningless because the elected prosecuting attorney participates in every criminal cause by virtue of his or her charging power. It cannot be stated strongly enough that, under this faulty logic, had Farkas remained the assistant prosecuting attorney assigned to try Brandolese's case when it went to trial, the state believes Juror No. 16 would be qualified to serve on the jury despite her kinship with Farkas because Farkas was not the elected prosecuting attorney. Construing the statute in this manner defeats the legislature's purpose in enacting section 494.470.1, which this Court has acknowledged as securing fair and unprejudiced jurors who are disinterested in the cause. *Stewart*, 246 S.W at 938. To read section 494.470.1 as splitting hairs between whether kin of elected or assistant prosecuting attorneys are qualified jurors would fly in the face of federal and state constitutional imperatives requiring criminal defendants to be tried by an impartial jury.

> Not only should a jury which hears a criminal case and which has great power be impartial in fact, but also if we are to hold true our ideals and retain the confidence of the community, the jury should also give every outward appearance of impartiality.

*State v. Carter*, 544 S.W.2d 334, 338 (Mo. App. St. L. Dist. 1976) (quoting *State v. Holliman*, 529 S.W.2d 932, 942 (Mo. App. St. L. Dist. 1975)).

The fair administration of justice and the avoidance of impropriety should compel this Court to find the plain meaning of prosecuting attorney "in the same cause" includes the elected prosecuting attorney by virtue of his or her power to commence the prosecution—in this case, Phillip Sawyer's role in conducting the trial as the elected

9

prosecuting attorney—and assistant prosecuting attorneys who otherwise participate "in the same cause." This reading gives effect to all the words within the statute without adding any additional language to qualify "prosecuting attorney." It effectuates the purpose of the statute by prohibiting kin of these participants who have an interest in the outcome of the litigation from serving as jurors. Most importantly, it safeguards a defendant's constitutional right to an impartial jury and avoids even the appearance of impropriety.

By construing the entire statute, including the words "in the same cause," this Court would avoid the state's other concern that Brandolese wishes to read section 494.470.1 to strike the kin of *all* assistant prosecuting attorneys. Kin of any assistant prosecuting attorney would not be disqualified automatically *unless* the assistant prosecuting attorney participated "in the same cause." Had Farkas never signed the complaint charging Brandolese nor appeared on the state's behalf during the pretrial proceedings, Juror No. 16 could be qualified to sit on Brandolese's jury if it were shown she could be fair and impartial. However, because Farkas was a prosecuting attorney "in the same cause" by virtue of signing the complaint and appearing at three pretrial hearings on the state's behalf, I maintain Juror No. 16 was disqualified from serving on Brandolese's jury under section 494.470.1.

*Inquiry into Bias, Prejudice, or Partiality*

To support its finding Brandolese did not demonstrate a manifest injustice occurred, the principal opinion essentially finds that, even if section 494.470.1 is construed to include disqualifying assistant prosecuting attorneys' kin, Brandolese's claim still fails because he

10

did not inquire whether Juror No. 16's kinship with Farkas would affect her ability to be fair or impartial. The principal opinion repeatedly faults Brandolese for failing to develop a record Juror No. 16 was biased and partial due to her relationship to Farkas. Hence, not only does the principal opinion require Brandolese to demonstrate plain error and resulting manifest injustice, which is burdensome under ordinary circumstances, but the principal opinion constructs additional hurdles the legislature never contemplated. Hence, Brandolese's and every defendant's burden is raised to an even higher standard than legally required. Moreover, the principal opinion repeatedly conflates section 494.470.1's language disqualifying Juror No. 16 as a competent juror because she is kin to Farkas with questioning a potentially qualified juror about the ability to be a fair and impartial juror generally and striking that juror due to bias.

It is inconsequential the record contains no evidence of Brandolese questioning Juror No. 16 about any potential bias because section 494.470.1 does not require Brandolese to question or otherwise demonstrate Juror No. 16 could not be fair or impartial before she could be struck for cause. Section 494.470.1's plain language requires disqualification *as a matter of law based on the juror's kinship with a prosecuting attorney*, not merely in those instances where the juror's bias or partiality can be demonstrated.

The principal opinion's declaration that this Court cannot presume bias or prejudice in the absence of Juror No. 16's actual knowledge her brother participated in Brandolese's prosecution is wholly unsupported by centuries of caselaw. In *Thomas*, this Court discussed the history and underlying rationale for section 494.470.1's predecessor statutes. This Court recognized, "'The rule seems to be settled that under the common law a juror

11

was disqualified if related to either of the parties [by] … consanguinity or affinity…; and that this was a ground of 'principal' challenge that is, of challenge on the ground of presumptive prejudice alone, without any showing of actual prejudice." *Thomas*, 174 S.W.2d at 340.

> The common law theory of such principal challenges was that the fact of relationship spoke for itself without proof of actual prejudice, 'for that' as Lord Coke put it, 'the law presumeth that one kinsman doth favor another before a stranger'; or, as one decision says, because 'blood is thicker than water.

*Id*. at 341-42 (internal footnote omitted). *Thomas* cited Sir William Blackstone's commentary that jurors could be challenged for bias or partiality, and "[a] principal challenge is such, where the cause assigned carries with it prima facie evident marks of suspicion, either of malice or [favor]: as, that a juror is of kin to either party within the ninth degree …." 3 Sir William Blackstone, *Commentaries on the Laws of England* *363 (Lewis Ed. 1767). Bias has been implied to relatives of trial participants for centuries. Notably, in *United States v. Burr*, 25 F.Cas. 49, 50 (D. Va. 1807), Chief Justice John Marshall asked, "Why is it that the most distant relative of a party cannot serve upon his jury?" Chief Justice Marshall concluded "the law suspects the relative of partiality; suspects his mind to be under a bias, which will prevent his fairly hearing and fairly deciding on the testimony which may be offered to him." *Id.* Hence, "[i]t is a universal rule that the relationship of a juror to one of the parties in a lawsuit disqualifies the juror. The question of whether he [or she] is *biased or prejudiced is of no concern.*" *State v. Miller*, 56 S.W.2d 92, 96 (Mo. 1932) (emphasis added); *see also State v. Chandler*, 314 S.W.2d 897, 900 (Mo. 1958) ("In a proper case on timely objection a juror within the

12

prohibited relationship should be excluded on the ground of presumptive prejudice which is the basis of the prohibitory statute."). Accordingly, the presumptive prejudice or bias of a juror who is kin to a prosecuting attorney does not turn on whether the defendant preserved the issue for appeal. The prejudice is inherent from the kinship between the juror and the prosecuting attorney, which automatically disqualifies the juror from serving in the same cause because it violates a defendant's substantive, constitutional right to a fair and impartial jury.

This general principle has been recognized when applying Sixth Amendment protections to the defendant's right to an impartial jury as well:

> [I]n certain instances a hearing [or questioning] may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice. *While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include … that the juror is a close relative of one of the participants in the trial ….*

*Smith v. Phillips*, 455 U.S. 209, 222, 102 S. Ct. 940, 948, 71 L. Ed. 2d 78 (1982) (O'Connor, J., concurring) (emphasis added); *see also Dyer v. Calderon*, 151 F.3d 970, 984-85 (9th Cir. 1998) (discussing this country's extensive history of recognizing presumed juror bias in which prejudice must "be inferred from [a] juror's relationships"); *United States v. Mitchell*, 690 F.3d 137, 145 (3d Cir. 2012) (recognizing "[i]t is well settled that the Sixth Amendment, like the common law, under some circumstances *presumes bias* when the relative of a party in a case serves on his or her jury in a criminal trial. *Indeed, consanguinity is the classic example of implied bias*.") (internal citations and footnote omitted) (emphasis added)).

13

The principal opinion wishes to place a prosecuting attorney's kin on equal footing with mere acquaintances or jurors who have no familial connection to any party, despite the statute's clear, unequivocal intent to disqualify kinship jurors from being seated. This position is not supported by caselaw, especially when contrasted with cases in which jurors who had a non-kinship relationship with a prosecuting attorney were questioned to determine whether they possessed bias resulting from that relationship. *See State v. Shoemaker*, 183 S.W. 322, 324 (Mo. 1916) (juror who was "well acquainted with the prosecuting attorney and his assistants" qualified to serve after stating "he would try the case fairly according to the law and evidence"); *State v. Grant*, 394 S.W.2d 285, 289 (Mo. 1965) (lifelong friend and former client of prosecuting attorney questioned regarding the ability to be fair and impartial); *State v. Arnette*, 686 S.W.2d 4, 8 (Mo. App. W.D. 1984) (acquaintances of county prosecuting attorney gave unequivocal answers and demonstrated no bias).

The principal opinion treats Juror No. 16 as though she is an ordinary juror, whom a defendant must demonstrate is biased before being struck, and requires this Court to presume the seated juror followed the circuit court's instructions to be fair and impartial. However, Juror No. 16 is not an ordinary juror. She is the sister of an assistant prosecuting attorney who actively participated in this case; therefore, pursuant to section 494.470.1, she was required to be disqualified. What seems to be wholly lost on the principal opinion is that pursuant to section 494.470.1, *she should not have been seated*; therefore, whether she followed the circuit court's instructions is irrelevant. Contrary to the principal opinion's assertion, neither the statute nor caselaw requires Brandolese to question

14

Juror No. 16 regarding the quality of her relationship with Farkas or whether she could be fair and impartial before requesting she be struck for cause or before demonstrating a manifest injustice occurred.

*Knowledge of the Juror and the Circuit Court*

The principal opinion also finds Brandolese cannot demonstrate manifest injustice because he did not show or allege Juror No. 16 was aware of Farkas' participation in the pretrial proceedings. Again, the principal opinion ignores the statute's plain language, which does not premise kinship disqualification on knowledge of a relative's participation in the cause, *only knowledge they are kin to a prosecuting attorney. Cf. Stewart*, 246 S.W. at 939-40 (holding no error in failing to disqualify a juror who was unaware he was distantly related to the victim); *Miller*, 56 S.W.2d at 96 (holding if "it is conclusively shown that a juror, so related, did not learn of such [*familial*] *relationship* until after verdict, there is no good reason why a new trial should be granted. A juror cannot be prejudiced by a fact unknown to him.") (emphasis added). Further, the principal opinion mischaracterizes the holdings in *Miller* and *Chandler* to support its argument Juror No. 16 could not be biased or prejudiced because she had no knowledge of Farkas' participation in the case. *Miller* and *Chandler* focus on *the juror's knowledge of the kinship relationship*, not knowledge their kin participated in a particular case to find prejudice.

I believe the same reasoning applies to principal opinion's assertion the circuit court may not have been aware of Farkas' participation in the early stages of Brandolese's case. The circuit court is presumed to know the law regarding section 494.470.1's disqualification provision. *Amick*, 462 S.W.3d at 415. Brandolese developed a record

15

Juror No. 16 was Farkas' sister, Farkas was an assistant prosecuting attorney, and the docket entries confirm Farkas' appearance on the state's behalf at three hearing dates in the early stages of the prosecution. This case "illustrates the wisdom of trial judges erring on the side of caution in ruling on challenges for cause in criminal cases where a replacement can be easily obtained for a prospective juror of doubtful qualifications." *State v. Stewart*, 692 S.W.2d 295, 299 (Mo. banc 1985).[5]

*Manifest Injustice Occurred*

I believe the circuit court's failure to sustain Brandolese's challenge to strike for cause Juror No. 16 violated section 494.470.1 and amounted to error that was evident, obvious, and clear. I further assert Brandolese demonstrated a manifest injustice occurred warranting relief under Rule 30.20.

In Missouri, "[f]ailure to strike an unfit juror is structural error …." *Dorsey v. State*, 448 S.W.3d 276, 299 (Mo. banc 2014). In *Weaver v. Massachusetts*, --- U.S. ---, 137 S. Ct. 1899, 198 L.Ed.2d 420 (2017), the United States Supreme Court clarified the structural error doctrine, explaining:

> The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.' For the same reason, a structural error 'def[ies] analysis by harmless error standards.'

---

[5] Given the small legal community in Pettis County with only one circuit judge, I find it disingenuous to continue to assert the state and circuit court were unaware of Farkas' participation in this case without Brandolese bringing the docket sheets to the circuit court's attention. Moreover, Sawyer, the elected prosecuting attorney who tried this case, surely reviewed the case file when preparing for trial and became aware which of his assistant prosecuting attorneys previously worked on the case.

16

*Id*. at 1907-08 (alterations in original) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309-310, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991)); *see also State v. Strong*, 263 S.W.3d 636, 647 (Mo. banc 2008). The United States Supreme Court recognized there are "at least three broad rationales" for the structural error doctrine, which include:

> First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest[;] …. [s]econd, an error has been deemed structural if the effects of the error are simply too hard to measure[;] …. [and] [t]hird, an error has been deemed structural if the error always results in fundamental unfairness.

*Weaver*, 137 S. Ct. at 1908. In *Strong*, this Court found,

> Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. One such structural defect is the trial by an adjudicator who is not impartial. Therefore, where a criminal defendant is deprived of the right to a fair and impartial jury, **prejudice therefrom is presumed**.

*Strong*, 263 S.W.3d at 647 (internal citations and quotations to *Fulminante* omitted) (emphasis added).

When determining the remedy for structural error, the United State Supreme Court took into account the nature of the error, when or if an objection was raised, and at what point during the post-trial proceedings the error was raised. *Weaver*, 137 S. Ct. at 1910-12. *Weaver* affirmed when "there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to '*automatic reversal*' regardless of the error's actual 'effect on the outcome.'" *Id*. at 1910 (quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999)). However, when the error is unpreserved and

17

raised on collateral attack, such as in a post-conviction relief proceeding, the defendant must demonstrate prejudice because the United States Supreme Court was concerned with "the systemic costs of remedying the error" at a time in which "[t]he finality interest is more at risk." *Id*. at 1912.

The United States Supreme Court has not, however, resolved whether unpreserved structural errors automatically satisfy the requirement of plain error review that the error resulted in prejudice. Rather, the Supreme "Court has several times declined to resolve whether 'structural' errors—those that affect 'the framework within which the trial proceeds,' automatically satisfy the third prong of the plain-error test.[6] *Puckett v. United States*, 556 U.S. 129, 140-41, 129 S. Ct. 1423, 1429, 173 L.Ed.29 266 (2009) (internal citation omitted) (quoting *Fulminante*, 499 U.S. at 310). Hence, the United States Supreme Court expressly reserved the question of whether structural error automatically satisfies the prejudice requirement for plain error review.[7]

---

[6] The third prong of the federal plain error test is whether the plain error "affected the appellant's substantial rights, which in the ordinary case means he [or she] must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993)).

[7] *Weaver* involved a defendant who did not object to his trial being closed to the public during voir dire, during the trial, or on direct appeal, but instead, raised defense counsel's failure to object as an ineffective assistance of counsel claim. *Weaver*, 137 S. Ct. at 1905. In finding the defendant had to demonstrate prejudice for this structural error, the United States Supreme Court expressed concerns with sandbagging and the circuit court's inability to remedy the error at the time it occurred or after direct appeal. *Id*. at 1912. *It bears repeating that, in this case, Brandolese made a contemporaneous objection with the circuit court about his challenge to Juror No. 16 sitting on the jury before the jury was seated and raised this issue on direct appeal, which alleviates the United States Supreme Court's reservations.*

The principal opinion seeks to expand Brandolese's burden to show a manifest injustice occurred when challenging the failure to strike a juror under section 494.470.1 to demonstrate bias or partiality of the juror being challenged. Setting aside the fact failing to strike an unfit juror constitutes structural error, the principal opinion cites no caselaw requiring a defendant to overcome these additional burdens. The principal opinion is unable to do so because section 494.470.1's plain language does not require a demonstration of bias or partiality to obtain relief.

In *In the Matter of the Care and Treatment of Braddy*, 559 S.W.3d 905, 916 (Mo. banc 2018), the defendant moved to strike a juror for cause who possibly displayed bias, the strike was overruled, and the defendant failed to preserve the issue. This Court held the failure to strike the juror "did not result in a manifest injustice as *he was not shown to be unqualified under either section 494.470.1* or section 494.470.2." *Id.* (emphasis added). The implication in *Braddy* is that if the defendant had demonstrated disqualification under section 494.470.1, as Brandolese has done, this Court would have found a manifest injustice occurred.

Hence, I contend the circuit court's failure to strike Juror No. 16 constituted reversible error resulting in a manifest injustice. Brandolese was deprived of his fundamental, constitutional right to a fair and impartial jury because a disqualified juror sat in judgment of his case. I would reverse the circuit court's judgment and remand the cause for a new trial.

_____
GEORGE W. DRAPER III, CHIEF JUSTICE

19